UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEKOVAN RIVERS,                          Case No. 17-11680

            Plaintiff,                 Avern Cohn
v.                                        United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 14, 15)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On May 26, 2017, plaintiff Dekovan Rivers filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Avern Cohn referred this matter to the undersigned for the purpose of reviewing

the Commissioner's unfavorable decision denying plaintiff's claim for

supplemental security income benefits.  (Dkt. 4).  This matter is before the Court

on cross-motions for summary judgment.  (Dkt. 14, 15).

B.    <u>Administrative Proceedings</u>

Plaintiff previously received supplemental security income benefits based on disability as a child.  (Tr. 20).[1]  Plaintiff's award of benefits was reexamined after attaining age 18.  It was determined that plaintiff was no longer disabled as of January 1, 2008.  Plaintiff filed an application for supplemental security income as an adult on January 16, 2014, alleging disability beginning on January 1, 2014.  (*Id.*).  The claims were initially disapproved by the Commissioner on May 12, 2014.  Plaintiff requested a hearing and on November 18, 2015, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") John Dodson, who considered the case *de novo*.  (Tr. 20-33).  In a decision dated February 22, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 33).  Plaintiff requested a review of this decision.  (Tr. 15).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 13, 2016, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II. FACTUAL BACKGROUND

### A. ALJ Findings

Plaintiff, born October 28, 1989, was 24 years old on the date he filed the

instant application for benefits. (Tr. 31). Plaintiff lives by himself (Tr. 49) and at

the time of the administrative hearing was in a vocational rehabilitation program

taking classes to become a machinist (Tr. 43). He has no past relevant work. (Tr.

31). The ALJ applied the five-step disability analysis and found at step one that

plaintiff had not engaged in substantial gainful activity since January 16, 2014, the

application date. (Tr. 23). At step two, the ALJ found that plaintiff's affective

disorders, "mild" learning disability, and hydrocephalous were "severe" within the

meaning of the second sequential step. However, at step three, the ALJ found no

evidence that plaintiff's impairments singly or in combination met or medically

equaled one of the listings in the regulations. (Tr. 24).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform medium work as defined
> in 20 CFR 416.967 (c) except he must not climb ladders,
> ropes, or scaffolds, but may occasionally perform all
> remaining posturals (i.e. climb, stoop, kneel, crouch,

3

> crawl, or balance).  The claimant must avoid even
> moderate exposure to pulmonary irritants, including dust,
> fumes, odors, gases, and poor ventilation.  He must avoid
> moderate exposure to hazards, such as heights and
> machinery.  The claimant is limited to unskilled work
> involving 1-3 step repetitive tasks with no work with the
> pubic and only occasional interaction with coworkers and
> supervisors.

(Tr. 27).  At step four, the ALJ found that plaintiff had no past relevant work.  (Tr.

31).  At step five, the ALJ denied plaintiff benefits because he found that there

were jobs that exist in significant numbers in the national economy that plaintiff

can perform.  (Tr. 31).

B.    Plaintiff's Claims of Error

 Plaintiff raises one point of error before the Court: that the ALJ's Step

Three determination that plaintiff's impairments do not meet or medically equal

Listing 12.02 is not supported by substantial evidence.  (Dkt. 14, at p. 7).  More

specifically, citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir.

2011), plaintiff argues that the ALJ's discussion on Listing 12.02 is deficient.  (*Id.*

at p. 8).  Plaintiff asserts that he has psychological or behavioral abnormalities

associated with his diagnosed hydrocephalous.  (*Id.* at 11) (Tr. 376-378, 382, 395).

Plaintiff also cites his testimony to support the assertion that he has demonstrated

memory impairment, and points out that his case manager noted a struggle with

cognitive deficits to demonstrate that he meets the A criteria.  Plaintiff argues that

he meets the B criteria because his case manager also noted severe impairment

4

with activities of daily living and social functioning, and moderate to severe impairment in concentration, persistence, or pace.  (*Id.*) (Tr. 223-34).  As to the C criteria, plaintiff directs attention to his hydrocephalus and his testimony to conclude that "it is clear that the Plaintiff has residual disease process that even when there is a marginal increase in mental demands or change in environment the Plaintiff would likely decompensate."  (*Id.* at p. 11-12).  Further, plaintiff says his hydrocephalus causes more than minimal limitations of the ability to perform basic work activity.

Plaintiff also argues that the ALJ's error at Step Three is not harmless because the evidence could reasonably meet or equal Listing 12.02.  (*Id.* at p. 12-13).

### C.   Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly concluded that plaintiff's impairments did not meet a listing, including 12.02.  (Dkt. 15, at p. 6).  Listing 12.02 requires psychological or behavioral abnormalities associated with a dysfunction of the brain.  The Commissioner acknowledges that that Plaintiff has severe mental impairments that potentially indicate psychological or behavioral abnormalities, but notes he has no associated symptoms with his hydrocephalus. (*Id.* at p. 7) (Tr. 23, 66, 376-378, 382, 395).

The Commissioner posits that plaintiff's case turns on the absence of evidence to establish the B or C criteria.  On the B criteria, the ALJ found only mild or moderate deficits in the various categories.  (*Id.* at p. 8-11).  Additionally, the Commissioner points out that the state agency physician determined that plaintiff did not meet or equal the B and C criteria.  Regarding the C criteria, according to the Commissioner, the ALJ observed that plaintiff did not have a current history of one or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.  (*Id.* at p. 11).  Finally, regarding plaintiff's hydrocephalus, the Commissioner contends that there were no episodes of decompensation in the record and his physicians noted no symptoms from his hydrocephalus.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984). While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform. (*Id.*). "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions[2]

As previously noted, if a claimant does not have current substantial gainful

employment and suffers from a qualifying severe impairment, the ALJ must assess

whether the claimant satisfies a listed impairment.  *Sheeks v. Comm'r of Soc. Sec.*,

544 Fed. Appx. 639, 641 (6th Cir. 2013); 20 C.F.R. § 416.920(a)(4)(iii).  If a

claimant's impairments meet or equal a listed condition, the ALJ must find him

disabled.  *Id.*  When considering presumptive disability at Step Three, an ALJ must

analyze the claimant's impairments in relation to the Listed Impairments and must

give a reasoned explanation for his findings and conclusions in order to facilitate

meaningful review.  *Hoffmeyer v. Comm'r of Soc. Sec.*, 2015 WL 12670493, at *10

(E.D. Mich. Aug. 17, 2015), report and recommendation adopted sub nom.

*Hoffmeyer v. Colvin*, 2015 WL 6735337 (E.D. Mich. Nov. 4, 2015) (citing

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  An

ALJ's failure to sufficiently articulate his Step Three findings is error.  *See id.*

---

[2] As noted above, plaintiff was found disabled until the age of 18, at which point he was
found to no longer be under a disability.  The ALJ in this case determined that there was new and
material evidence since the prior determinations, and that as a result he was not bound by any
prior determination under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  The
Commissioner provided supplemental authority to Court on the Sixth Circuit's recent decision in
*Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).  (Dkt. 16).  *Earley* clarified the
reach of *res judicata* principles, holding that where an individual seeks disability benefits for a
distinct period of time, that application is entitled to review.  *Id.* at 933.  The court further held
that principles of res judicata "do not prevent the agency from giving a fresh look to a new
application containing new evidence or satisfying a new regulatory threshold that covers a new
period of alleged disability while being mindful of past rulings and the record in prior
proceedings."  *Id.* at 931.  Having determined that he was not bound by any prior decision, the
ALJ gave the evidence in the record a "fresh look," satisfying *Earley*.

(citing *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp.2d 846, 858-59 (E.D. Mich. 2012)); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").

"The requisite explanation and support need not be located entirely within the section of the ALJ's decision devoted specifically to step three; courts have endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL 4897364, at *6 (E.D. Mich. Sept.14, 2012).  Moreover, the Sixth Circuit has rejected a "heightened articulation standard" for a listings analysis.  *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision and stating that there is no need for the ALJ to "spell out every fact a second time").

Plaintiff contends the ALJ erred at Step Three because the conclusion that his impairments do not meet or equal Listing 12.02 is not supported by substantial evidence.  The ALJ addressed listings 12.02, 12.04, 12.05, 12.06, and 12.08, and compared these listings to plaintiff's impairments and the evidence in the record. (Tr. 24-27).  While plaintiff cites to evidence he believes constitutes substantial

evidence to support a finding that he meets or equals Listing 12.02, the question

before the Court is whether substantial evidence supports the ALJ's determination

that plaintiff does not meet or equal Listing 12.02.

Listing 12.02 provides:

> Organic Mental Disorders: Psychological or behavioral
> abnormalities associated with a dysfunction of the brain.
> History and physical examination or laboratory tests
> demonstrate the presence of a specific organic factor
> judged to be etiologically related to the abnormal mental
> state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met
> when the requirements in both A and B are satisfied, or
> when the requirements in C are satisfied.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (as effective on the date of the decision).  The

ALJ found that plaintiff did not meet the B criteria of the listings (D criteria for

12.05).  The paragraph B criteria of Listing 12.02 are identical to the criteria

contained in paragraph B of 12.04, 12.06, and 12.08, and identical to the D criteria

in 12.05.  The B criteria (or D in Listing 12.05) require the following:

> ... at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning;
> or
> 3. Marked difficulties in maintaining concentration,
> persistence, or pace; or
> 4. Repeated episodes of decompensation, each of
> extended duration.

The ALJ concluded that plaintiff has mild restriction in activities of daily living, moderate difficulties with social functioning and concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 26).  In making this determination, the ALJ stated,

> The claimant lives alone and is able to do yard work, wash dishes, write poetry, write in a journal, watch television, listen to music, cut his own hair, go for walks, work out, cook, and play video games.  He is somewhat withdrawn; however, he has friends and a girlfriend and he is able to get out regularly, go out alone, use public transportation, talk with others on the phone, visit with others, go to the movies, participate in a vocational rehabilitation program, and seek employment (Hearing & Exhibits C5E, pg 2, C9F, pgs 9 & 13, & C10F, pg 3). Likewise, although given little weight because it was a one-time observance, at the hearing, the claimant was friendly, pleasant, cooperative, and polite with no unusual behavior or mannerisms observed.  He did not appear to be in distress and he was able to understand, focus, concentrate, comprehend, respond, communicate, pay attention, and remember adequately.

Inasmuch as the criteria for meeting Listing 12.02(B) is the same as that required for 12.04, 12.06, and 12.08(B) and 12.05(D), the ALJ's analysis adequately addresses the requirements for each of the Listings noted.  (Tr. 26); *see also Suesz v. Comm'r of Soc. Sec.*, 2014 WL 4162555, at *5 (S.D. Ohio Aug. 20, 2014) ("While the ALJ did not expressly analyze whether Plaintiff met Listing 12.02, he did provide a thorough analysis of the severity requirements of Listing 12.04.  In so doing, the ALJ determined that Plaintiff's impairment did not satisfy the criteria

in paragraph B or paragraph C" which are substantially identical); *Bettis v. Astrue.* 2013 WL 1209408 at * 9 (D.Md. Mar. 22, 2013) ("The ALJ specifically found that Ms. Bettis did not meet "paragraph B" or "paragraph C" criteria under 12.04. Finding that Ms. Bettis did not meet these criteria under 12.04 is equivalent to finding that Ms. Bettis did not meet these criteria under Listings 12.06, as the criteria are identical."); *see also Bloom v. Astrue,* 2009 WL 2449877, at * 19 n. 18 (D.Md. Aug. 7, 2009) (determining that a finding that the claimant failed to meet Listing 12.04 was "tantamount to a finding that [claimant] did not meet Listing 12.02."). Further, the ALJ's discussion here undermines plaintiff's contention that the ALJ merely recited the requirements of the listings and summarily concluded that he did not meet the listings.

Elsewhere in the decision, the ALJ observed that treatment records revealed that plaintiff's mental health has been improving. Plaintiff received treatment for mental health beginning in September 2013. By October and November 2013, plaintiff reported no longer feeling depressed. (Tr. 359, 362). In May through August 2015 he denied feeling depressed and reported doing well. (Tr. 447, 451, 455, 459). Plaintiff also testified that he no longer has problems with focusing since taking Cymbalta. (Tr. 46). The ALJ also discussed a consultative mental status evaluation completed by Dr. Boneff in January 2016 in which the doctor found that plaintiff was "very polite, calm, cooperative, attentive, and seemed

16

eager to put forth his best effort.  He denied any current emotional or behavioral problems." (Tr. 465).  During this same examination, plaintiff was also noted to be alert, in touch with reality, logical, goal directed, and "a good historian." (*Id.*).  He denied any suicidal/homicidal ideations, psychosis, paranoia, problems controlling his anger or aggression. (Tr. 466).  Dr. Boneff concluded that plaintiff "is not evidencing any significant cognitive limitations, problems with memory or concentration, nor is there any evidence to indicate that he would have difficulties appropriately interacting in a work/social environment or following 2 or 3 step directions at a sustained pace." (Tr. 467).  The ALJ gave this opinion significant weight; plaintiff does not challenge this determination. (Tr. 29).

The ALJ also noted that plaintiff is able to live alone, go out alone, use public transportation, and participate in a vocational rehabilitation program. (Tr. 26).  Plaintiff's denial of feeling depressed on multiple occasions also belies the contention that he would have marked limitation in the listed categories.  In addition, the ALJ relied on Dr. Boneff's opinion, discussed above, which does not demonstrate marked limitations.  Moreover, State agency physician Dr. Yousuf considered the B criteria and found only mild or moderate impairment. (Tr. 67).  The ALJ gave Dr. Yousuf's opinion significant weight. (Tr. 29).  And, Dr. Yousuf concluded that plaintiff did not meet or equal a listing.  Although Dr. Yousuf did not list 12.02 among the listings she considered, she did consider listings 12.04 and

12.06 which have the same B criteria as 12.02(B). Dr. Yousuf also considered plaintiff's diagnosed hydrocephalus in making her findings, a diagnosis on which plaintiff partially bases his argument that he meets the listing. (Tr. 64-68). In light of the medical evidence, the ALJ's determination that plaintiff does not meet or equal the B criteria is supported by substantial evidence.

Plaintiff has not marshalled evidence suggesting that he met the Listing. Plaintiff relies on his own testimony of losing focus and his case manager's notes finding severe impairment in activities of daily and social functioning. However, the ALJ found plaintiff's testimony to be not entirely credible (Tr. 31), and gave little weight to the opinion of his case manager because she is not a medically acceptable source (Tr. 30). Plaintiff does not challenge either of these determinations. Plaintiff also testified that his focus is better now that he is on Cymbalta. In any event, as discussed, two physicians, Drs. Boneff and Yousuf, provided evidence in support of the ALJ's determination on the B criteria.

Plaintiff also appears to claim that his hydrocephalus impairment demonstrates that he meets Listing 12.02 because the condition has caused more than a minimal limitation in the ability to perform work activity. However, the record shows, as the ALJ discussed, that plaintiff suffers no symptoms as a result of the impairment. (Tr. 376-77, 382). Moreover, the State agency physician considered plaintiff's hydrocephalus, and did not find that plaintiff met or equaled

a listing.  (Tr. 66-68).  The evidence cited is sufficient to demonstrate that plaintiff

does not meet the B criteria; Dr. Yousuf found plaintiff does not meet or medically

equal a Listing; and plaintiff has not pointed to evidence which would require a

different result.

The ALJ also considered the C criteria of the listings.  Like the B criteria,

the C criteria of 12.02 are the same as other listings (*see, e.g.* Listing 12.04C).  *See*

*Postma v. Astrue*, 2012 WL 3912858, at *2 (N.D. Ohio Sept. 7, 2012) (finding no

error in ALJ's failure to discuss B criteria of listing 12.06 because he discussed the

criteria of listing 12.04, which are identical).  Paragraph C of 12.02 states,

> C. Medically documented history of a chronic organic
> mental disorder of at least 2 years' duration that has
> caused more than a minimal limitation of ability to do
> basic work activities, with symptoms or signs currently
> attenuated by medication or psychosocial support, and
> one of the following:
> 1. Repeated episodes of decompensation, each of
> extended duration; or
> 2. A residual disease process that has resulted in such
> marginal adjustment that even a minimal increase in
> mental demands or change in the environment would be
> predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function
> outside a highly supportive living arrangement, with an
> indication of continued need for such an arrangement.

The ALJ stated that "the evidence fails to establish the presence of the

'paragraph C' criteria because he does not have a current history of one or more

years' inability to function outside of a highly supportive living arrangement, with

an indication of continued need for such an arrangement." (Tr. 26-27). The ALJ

had already concluded that there were no episodes of decompensation in the

record. The ALJ's discussion of plaintiff's daily activities support the ALJ's

conclusion: there is no evidence or testimony demonstrating that plaintiff has been

unable to function outside of a highly supportive living arrangement. Indeed, at

the hearing, plaintiff testified that he lives by himself and did not discuss ever

living in a highly supportive living arrangement before living by himself. (Tr. 49).

Regarding subsection (2), Dr. Boneff indicated that plaintiff would not have

difficulties appropriately interacting in a work/social environment. This evidence

does not support the notion that a change in the work environment would cause

him to decompensate. Further, plaintiff testified that he is taking classes to become

a machinist through a vocational rehabilitation program, which he attends Monday

through Thursday from 8 to 4:30 pm. (Tr. 51, 465). This would likely involve an

increase in mental demands as compared with not working and not taking classes.

Yet, plaintiff has not suffered an episode of decompensation because of an increase

in mental demands. Indeed, he said he likes his classes a lot and is actively

involved. (Tr. 51, 465).

   In addition to the medical and subjective evidence addressed above, as with

the B criteria, Dr. Yousef determined that the evidence does not establish the

presence of the C criteria, and found that plaintiff's impairments did not meet or

equal a listing.  (Tr. 66, 67).  The undersigned suggests that Dr. Yousuf's

equivalency opinion, although not directly addressing 12.02, is likely sufficient for

the ALJ to rely upon in relation to Listing 12.02 also.  As explained, the B and C

criteria of 12.02 are identical to the criteria in 12.04 and 12.06, for which Dr.

Yousuf expressly considered medical equivalency in her opinion.  Further, Dr.

Yousuf considered Listing 11.18, Cerebral Trauma (Tr. 68).  This Listing states, in

whole, "Evaluate under the provisions of 11.02, 11.03, 11.04 and 12.02, as

applicable."  Having considered the same B and C criteria as that contained in

12.02, and having considered 11.18, it would appear that Dr. Yousuf sufficiently

took into account whether plaintiff's mental impairments met or equaled a listing,

including Listing 12.02.  *See* Social Security Ruling (SSR) 96-6p, 1996 WL

374180, at *3 ("The signature of a State agency medical or psychological

consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or

SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or

Blindness) ensures that consideration by a physician (or psychologist) designated

by the Commissioner has been given to the question of medical equivalence at the

initial and reconsideration levels of administrative review.").

Even if there were any error in the ALJ relying on Dr. Yousuf's opinion, the

undersigned suggests that it was harmless.  *See Lusk v. Comm'r of Soc. Sec*., 106

Fed. Appx. 405, 411 (6th Cir. 2004) (to show equivalence, the plaintiff must

"present medical evidence that describes how his impairment is equivalent to a listed impairment"); *Bondy v. Comm'r of Soc. Sec.*, 2015 WL 1530435, at \*20 (E.D. Mich. Mar. 31, 2015) (Murphy, J.); *Buchanon v. Comm'r of Soc. Sec.,* 2015 WL 927831, at \*6-7 (E.D. Mich. Mar. 4, 2015) (Steeh, J.).  Although courts in this district generally remand when the record contains "no equivalence opinion whatsoever," they also acknowledge that "the lack of a medical opinion on equivalence can be deemed harmless error in some cases."  *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at \*6 (E.D. Mich. Sept. 26, 2014) (Michelson, J.); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-three findings).  Here, as discussed above, the evidence does not demonstrate the possibility that plaintiff could meet or equal the B or C criteria of 12.02.  To show that the error was not harmless, plaintiff would need to come forward with some evidence to suggest that there was a reasonable possibility of a finding of equivalence.  *Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at \*13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The lack of an expert opinion on whether the claimant's physical impairments medically equal any listed impairment is clear error and requires remand where the record is not so lacking in medical findings that a finding of equivalence is implausible.).  Unlike the plaintiff in *Brown*, plaintiff has not shown that a finding of equivalence is plausible here.  As discussed, Dr. Boneff's findings do not raise

the possibility of equaling the listing; plaintiff's activities of daily living do not suggest that he would equal the listing; and Dr. Yousuf did not find that plaintiff met or equaled a listing, and specifically addressed both the B and C criteria found in 12.02. Plaintiff's testimony and his case manager's notes do not direct a different conclusion.

For the foregoing reasons, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Therefore, the undersigned suggests that there is no reversible error at Step Three.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 29, 2018            s/Stephanie Dawkins Davis
                                 Stephanie Dawkins Davis
                                 United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on August 29, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

            <u>s/Tammy Hallwood</u>
            Case Manager
            (810) 341-7850
            <u>tammy_hallwood@mied.uscourts.gov</u>